All rise. The Illinois Appellate Court's 6th Division is now in session. The Honorable Justice Thomas E. Holman is presiding. Be seated. The time that we allot for oral arguments is 15 minutes for the epilogue, 15 minutes for the epilee, 5 minutes in rebuttal. Is there going to be more than one epilee argument, or only the plaintiff? Only the plaintiff. Call. Case No. 15-2773, Bryant v. Wal-Mart Stores, Inc. May it please the Court, Counsel. My name is John Pigore. I represent the third-party defendant Appellant, Summit Fire Protection Company. With me at counsel table is John Huntley. Mr. Huntley served as trial counsel for Summit at the Good Faith Hearing and at the jury trial. We're asking this Court to reverse the judgment entered in favor of Frank Barnai as assignee on the assigned contribution actions. The Contribution Act provides a right of contribution only in favor of a tortfeasor who has paid more than his pro-rata share of the common liability. Mr. Barnai claims the common liability here is $5,073,000, the amount paid by Wal-Mart, ICI, and Newline. Yet, we believe it is beyond dispute that if this Court affirms the $2.1 million judgment, his net recovery after repayment of the work comp lien will be $7.2 million. But he doesn't recover the $7.2 million in his capacity as plaintiff. He recovers the $7.2 million, $5 million in his settlement with the three defendants, and $2.5 million as the assignee of Wal-Mart. Is that not the case? If you're asking are there two different legal entities here, I think... Would that be a yes or a no? He acquires the $2.5 million as the assignee of Wal-Mart. Yes, sir. And if there had been no assignment, he would have still gotten $5 million. And in theory, we'll get to that in a minute, your client still would have been responsible for $2.5 million in contribution. So your client doesn't pay any more money no matter which way you figure the common liability, does he? There's a lot of questions there. I could answer three of them. I think the first question I would like to answer is, is it the same person who's recovering the $5.073 million and the $2.1 million? And I think Cloudy tells us that the answer to that question is yes. At the end of the day, Frank Barney will recover $7.2 million net. But Cloudy was only decided based on the fact that the assignment was held to be void because the S&R had not paid more than his pro rata share. It didn't have anything to do with who was getting it. Because in Cloudy, they valued the liability of the third party defendant at $100,000, did they not? At the time of the settlement? It depends on which, whether you really, in the majority they say yes. In the majority, they say that the parties valued the settlement at $500,000. The tortfeasors paid $400,000 and assigned their right of contribution. And what the court found there is that they did not pay more than their pro rata shares and therefore the assignments were void. Well, really the same thing happens here. I think the point of Cloudy... There's a little difference between you and Cloudy. In Cloudy, the maximum liability and contribution of the third party defendant was the Kotecki limit. In your particular case, there is no limit. That's a fact, but I think it's irrelevant here because all they ever wanted was a lien. There was no question, no real exposure, access of the lien. And in fact, I think Mr. Healy made it clear in the record when the trial judge, Judge Lawrence, said to him, Mr. Healy, there's no way that Mr. Binari is ever going to get more than $5.1 billion. And the response was, all they want is a waiver of the lien. In fact, in their settlement negotiations, all they wanted was a waiver of the lien. No one ever thought or valued this case at more than the value of the lien, just like in Cloudy. Really, when you look carefully at all the points here, this case is on all fours with Cloudy. And getting back to what I think was the first question, are there two separate entities here? I think Cloudy answers that with the following discussion. What Cloudy did was they looked at the economic realities. And the economic realities here are that these assignments were made to increase the plaintiff's recovery. And that's the problem. But isn't that just a matter of contract between the plaintiff and the settlement parties? And it goes back to Kazan, which is cited in the police brief, where we explain that this is all game theory. The yes or no answer to that, sir? No. It is not just a matter of contract. And I think Wilson gives us that answer. In Wilson v. Hoffman, we had a settlement between the plaintiff and his employer where they paid $24,000 and waived the lien. And then he wanted to prosecute his negligence case against a general contractor. The Supreme Court there said that that would constitute a double recovery. It implicates the public policy of double recovery, even though we had a contract on the one hand. The reason is because when we're before this court, like the parties were before the court in Wilson, they are asking this court to affirm a tort judgment. And when the court is asked to affirm a tort judgment, that implicates the public policy against double recovery. That's what happened in Wilson, even though you had a contract. The cases that are cited in the briefs, Kim v. Alvey and McNaghan, both recognize the distinction between an appellate court that's being asked to affirm a judgment on a settlement contract and an appellate court that's being asked to affirm a judgment on tort liability. Those two appellate court decisions recognize that distinction. And they also said that where this appellate court is asked to affirm a tort judgment, that implicates the public policy against double recovery. The quality is based on a notion that they were able to determine that at the very time of the settlement, the amount paid by the city of Sycamore did not exceed its prorated share of liability. Of course, it seems as though the Supreme Court forgot about the common law of Edison, didn't they? In the majority. But at any rate, in this particular case, there would be absolutely no way to compute based on your theory of what the common liability is at the time of the assignment. One would have to wait, evidently, until the jury performed its job and determined the percentages of liability so that contribution judgment could be reduced to a monetary sum. Because it's that monetary sum that you want added to the cash paid to determine common liability. That's how you yield seven plus million, isn't it? You have to do that. I think in this case... Will you add a yes or a no? I think it's a no. No, I think it's a no. No? Well, here's why. Because in this case, all roads lead to 7.2 million. Let me ask you a question. Let me ask you a question. You've got 5,000,000... What is it? $5,073,463.71 is paid in cash. Is that correct? Yes, sir. Okay, and how much is the monetary sum placed on the jury verdict? 2.1. It's not 2.1 exactly, is it? It's approximately 2.1. And when you add the two together, how much does that come to? 7.2. Exactly the same amount of money that you claim is the common liability. Is that a coincidence? I think it's a fact that all roads lead to 7.2 million here. Yeah, is it a coincidence? I don't know. But I know that that's the exact amount of money that was their last settlement demand that they would not go below. They asked for $7,217,664.84? No, sir. They asked for 7.2 million. Okay. They asked for 7.2 million that wouldn't go below. How do you determine the common liability? The Supreme Court in Cloudy determined the common liability by the facts in the record that show that the parties validated at $500,000 and they settled at $4,000. No, they settled at $4,000 plus an assignment. Plus an assignment. The maximum value of which would have been approximately $100,000. And here what they did was they settled for $5,073,000 and the assignment, which was all they said they ever wanted. All they said they ever wanted was the waiver of the lien. All they said they ever wanted was $7.2 million. All they said they ever wanted was the waiver of the lien. It was the waiver of the lien that they would not settle without. And it's the coincidence or not, it is the final amount. Now, I don't know how this case would be different if it was. It's not the final amount because he said he wanted $7.2 million and you say the common liability is $7,217,664.84. And that is the product of an equation. And the part that you're fitting in to get to that number is exactly the monetary amount of the judgment. Now, that could, contribution judgment, that could not be known at the time of the assignment in quality. It was known because the party said it. And they said it in their settlement according to the majority. Now, I understand that the sentence says it's not there, but the fact of the matter is the majority is the majority. So if you cannot know the full amount of the contribution liability at the time the assignment was made, in that particular case, how can you say that the assignment is void ab initio because as a matter of, I guess, absolute fact, the party did not pay more than their prorate share? I believe the answer to that is because the purpose of this assignment is to increase the recovery. And that's the only reason they did it. It's clear from the record that's why they did it in quality and that's why they're doing it here. And that's where you run into a problem. Because if the common liability is $5.073 million and he gets another $2.1, I think it's clear under Wilson that there's a double recovery here. On the other hand, if it's $7.2, then they haven't paid more than their prorate share. How do we know they haven't paid more than their prorate share? How do we know that? Can we even calculate what their prorate share is based on when this case was tried? I think you can. No, it was never placed on the verdict form. What is common liability? That's the common liability of all tortfeasors who contribute to the injuries suffered by the plaintiff. That's everybody. Why was New Line left off of that verdict form? That was the form that was tended by the plaintiff. I understand that. Can you compute common liability or prorate a share of common liability without New Line's culpability having been determined? Is that possible? Probably not. Well, if that's the answer, then the answer to this case is vacate the judgment, send it back, and tell them to do over on the contribution placing New Line on the judgment line. The problem that I have with your argument is really a simple one. On page 43, I think, of your brief, you claim that they didn't pay more than their prorate share of the common liability because, collectively, the amount that they paid, $5 million, does not exceed the prorate share of liability if you take the $2 million and add to it. They paid exactly their common liability. But we're not judging, in this particular case, whether the global settlement exceeded their common liability. We're being asked the question of whether Wal-Mart's portion exceeded its prorate share, which is an entirely different issue. Is it not? Yes. And I think that when we get to the end of this, we see that the only judgment here is Frank Barney as S&E of Wal-Mart. And I think that Wal-Mart did not pay more than its prorate share. How do we know that? Without knowing what its prorate share of common liability is because New Line had been left off the verdict form. How do we do that? I mean, they did it by subtracting the amount of money New Line paid towards the global settlement from the $5 million and said that the common liability of Wal-Mart in ICE was $4 million X number of dollars and therefore they got a verdict form that said what it was as between the three. So they were trying to set off... Does that make any sense to you? They were trying to set off... Do you understand? Yeah. Does that make any sense to you? At the time, it seemed to make sense. Well, think about it. Think about it. But that's what we're left with. That's the judgment that they're asking this court to affirm. Wait a minute. No, no, no. That's the judgment you're asking this court to reverse. And I'm asking you the question is if we have no means of determining what Wal-Mart's prorate share of common liability is, how then could we come to the conclusion that they paid in excess of that prorate share? How do we do that? Well, you can't. Okay. You can't because at 5.073, I think you have to weigh in the Supreme Court decision in Wilson. At 5.073, it really doesn't matter how much Wal-Mart paid, how much ICI paid, and how much Muline paid because collectively, they only paid their own prorate shares and the 2.1 million is a double recovery. Well, let me ask you this quick. Let me make this real simple because I'm not real good at math. What if three defendants settle with a plaintiff and they settle for $100,000 and they release the liability of the employer and they value the release of the lien, which is $20,000. So you've got a common liability of $120,000. And then the three settling defendants go after the employer in contribution and the jury returns a verdict of 25%, 25%, 25%, and 25%. If any one of those settling defendants paid more than $30,000, they're entitled to contribution. Are they not? I assume so. Okay. So it doesn't make any difference whether the global settlement satisfies because they only paid $100,000 cash. The question is does each individual settling defendant has that entity paid more than its prorate share? In this particular case, it's Walmart. And they calculated their prorate share by a verdict that did not include new lines. So I don't know where we're at yet. Let me ask you. Perhaps, Your Honor, the fundamental question that we're asking this court to consider is whether or not block is good law, whether or not the cloudy descent is good law. And ultimately, we're asking this court to reverse and we're asking this court to consider a very basic fundamental question here that you really can't do this. That you really cannot allow defendants to settle and assign a contribution action for the purpose of increasing the plaintiff's recovery. Any time, any time the contribution action is assigned to the plaintiff, it would be for the purpose of increasing the money it ultimately receives. Right. And that would go contrary to the descent in cloudy and it would go contrary, actually, the majority in cloudy never approached it. They danced it. Actually, the majority in cloudy touches on it in the very last paragraph of the decision where they discuss why a municipality can't make this payment and they say a municipality can't give a windfall. Can't give a windfall is what they said. And the fundamental problem of block and the fundamental problem with the descent in cloudy is that they don't consider Wilson and they don't consider the public policy against double recovery. And the whole, I'm asking this court to consider block and to consider the descent in cloudy and to take a fresh look at it because when they do this to increase the plaintiff's recovery. Mr. Picori, cloudy is an Illinois Supreme Court decision, is it not? The descent. Yes. I'm asking you to follow the majority. We have to follow the majority. Of course. But block follows the descent. And Kazone follows the descent. And Whetstone follows the descent. But everyone seems to have forgotten about the majority. But there is absolutely no case that you can cite that says that the assignment of a defendant's right of contribution as against an employer to the plaintiff himself is contrary to public policy no more. What is the case that says that? There's no case that says the assignment is against public policy. What is against public policy is the double recovery that results if the common liability is 7.2 million, excuse me, if the common liability is 5,073,000, he recovers 7.2 at the end of the day, there's a double recovery. So I suppose really what your argument is is that they're contrary to the plaintiff's position. The common liability must take into consideration the value of the assignment. So, in other words, it's not really the cash. It's the cash plus the value of the assignment. There's no question that the assignment has value. It's part of the consideration of the settlement agreement. But when they settled, who knew what the value was? It's the same in Cloudy. They didn't know they were going to get 100,000. They might have gotten nothing. They might have gotten 10. They might have gotten 20. It was capped under Kentucky. It was capped here by the size of it. But here, there's a lot of problems with the Cloudy dissent. And no one has ever addressed... Cloudy addressed the double recovery problem and said a California and a Florida decision that would allow double recovery, but at the same time, the Cloudy dissent doesn't look at Wilson, which was six years old at the time, and argues that it's a matter of contract. But Wilson refutes that. You can't read the Cloudy dissent and say that this is good law when he disregards Wilson. In fact, when the Supreme Court decided Cloudy, did it not have the opportunity to say, once and for all, it can't assign a contribution claim like this to a non-Torquezer plaintiff? They had that opportunity, and they didn't take it. They didn't take it. What they said... They specifically said they knew about it. What they said is that... They don't have it. This one is void. Yeah. What they said is this one is void. Yeah. Before you burn, I'm going to give you a little more time, because I want some answers to a couple of your other issues. Do you want to tell me about this insurance set-off situation that you're arguing? The $773,463.71 set-off? Yes, sir. Can you tell me, what did the insurance policy insure Walmart, New Line, and ICI-4? Only the vicarious liability that they will sustain by reason of the acts of summit and their employees. Well, the endorsement covers liability rising out of the work of summit. Only... Rising out of the work... Your Honor, there's conflicting case law on what exactly that means. Some of the older case law says that a rising out of the work means that it covers the independent acts of negligence so long as there's but-for connection to the work of the named insured. Some of the later cases suggest that a rising out of the work is limited to vicarious liability. Here, what we have is ICI... Summit purchased the interstate policy. Summit's the named insured. ICI and the Walmart, not New Line... Right. The... On the endorsement. The additional insurance. And interstate pays $773,000... For whom? For Walmart and ICI. My other question. Now, under Monshine, you would only be entitled to a set-off if the payment was made pursuant to a policy that only insured Walmart and ICI for their vicarious liability by reason of the acts of Summit. That's what Monshine says. But there's even a bigger problem. Because wouldn't we have to know in order to determine whether you would be entitled to a set-off? That's a set-off is against the contribution judgment in favor of the plaintiff is asking Walmart. So we would have to know how much of the $773,463 was paid on behalf of Walmart and settles an affirmative defense, isn't it? Settles an affirmative defense in the nature of satisfaction. This is money that... In fact, the basis of Monshine is the third-party plaintiff here has already recovered this sum. Walmart already recovered this sum because it was contributed to the amount that funded his settlement with the plaintiff. Well, that's what happened to Monshine, too. Right. So my question is... You're going to... You... The judgment that was entered against you was entered by reason of the contribution action filed by Walmart. So wouldn't your set-off, if you were entitled to it, be restricted to that portion of the $773,463 that was paid on behalf of Walmart? Walmart benefited from the entire $773,463. There was no settlement without it. There was no settlement for Walmart or anyone else without the $773,463. So Walmart benefited from the $773,463 and it reduces that common liability. The concern that you're raising here is adjusted when you take it off the common liability and then you apply the 52% to the reduced amount that was the common liability of all defendants. But is there anything in the record that reveals how much, if any, proportion of the $772,463 was paid on behalf of Walmart as additional insured vis-a-vis ICI as additional insured? No. Okay. The next little question that I have that troubles me is good faith argument. As to whether Judge O'Hara heard in finding good faith before he knew what the allocation was. And your argument is that can't be because before we know what the allocation was we don't know and cannot know whether the proportionate share paid by Walmart or any relationship whatsoever to what's called the bill. Is that your argument? Not exactly. Here's the fundamental problem that I have with the good faith hearing. What we have is a situation in which the plaintiff's attorney appears and assures Judge O'Hara that no allocation is necessary. Gets the good faith finding and then later they create an allocation that is never subjected to judicial scrutiny. Exactly. So the question becomes must the global settlement be subjected to judicial scrutiny vis-a-vis allocation before there can be a finding of good faith? If there's going to be an allocation a trial judge has to see it. Okay. So now I suppose the question that I have is can you ever make a determination that it's in good faith when you have multiple parties to a global settlement without knowing what the attribution or the allocation is as a Muslim? I think that we have a couple of cases that we cited in the briefs that said an allocation is not necessary for a good faith finding. We have a couple of other cases that say it is. But it's different here. Distinguishable because they're not talking about an allocation as between multiple settling defendants. Let me ask you another simple question. I spoke. Did Summit ever file a contribution action as against Wal-Mart, ICE, or New Line? Did Summit? Yes. File a contribution action? No. Well then, what difference would it make whether the settlement was in good faith or not? What difference does it make? Does a tortfeasor who settles a claim with a plaintiff not in good faith lose their right to contribution as against another non-settling defendant? No. They're opposites. Contribution action. The only purpose for a good faith finding is to cut off the obligation of contribution on behalf of the settling defendant. It doesn't do anything else as to the settling defendant. So if we were to find that the settlement wasn't in good faith, what remedy could we do? Where do we go? What do we do for it? Back to another good faith finding. For what purpose? For the trial court to consider the fact that they're piling on money on Wal-Mart whose affirmative defense has been stricken and is subject to sanctions liability. And what's happening here, in this case, is that the least culpable, whose affirmative defense has been stricken, is paying the most amount of money. And now what happens in the context of this assignment is Frank Barney is getting contribution, in quotes, for his own comparative negligence. Frank Barney is getting contribution for the sanctions liability. Hold on. I saw those arguments. Number one, you cite no authority for the notion that the dismissal of the sanction actions, for some reason, had value that contributed to the value of the settlement. So we have nothing there. And Ewanek tells us that settlement paid to a plaintiff includes the plaintiff's contributory negligence. So you don't have real good arguments there. But get me back to the question of what value would it be, what could we do, or what would be different if we said that the trial court burdened finding good faith? You say send it back. Well, what difference does it make? The contribution action is a determination of whether Walmart paid more than its pro rata share of common liability. We have a problem here because we really don't know what the pro rata shares are because of the absence of the new line on the verdict form. But if the new line were on the verdict form, then in that particular case, we would know from the jury the exact pro rata share that Walmart had and they said they paid $2,500,000. So are they entitled to recover anything in excess of their pro rata share? Ewanek tells us that in the settlement negotiations, the plaintiff's comparative fault is factored into the settlement. But here, Walmart's affirmative defense of comparative negligence was stricken. And therefore, since the judgment here is Frank Bainais at S&E of Walmart only, it's clear that some portion of this judgment covers Frank Bainais' comparative negligence because they didn't factor it in when they negotiated with Walmart. The fundamental problem here is that the allocation was created after the good faith finding was never subjected to judicial scrutiny and no appellate court has ever affirmed that kind of a procedure. And if this court were to affirm that kind of a procedure, you're opening the door to all kinds of mischief that can happen in multi-party litigation. If no trial judge has to even see the allocation, it's a recipe for untold mischief. At the very least, this case requires reversal and a remand for a new good faith hearing and a remand for a new trial. Let me back up to the first issue for a moment and just a couple questions. Sure. You raised the issue about the contribution actions being voided up in the shale. You raised it a million times at the trial. What specific order of the circuit court, whether it was entered by Judge O'Hara or by Judge Lawrence, does your appeal stem from of that issue? Is it the post-trial motion? Is it some predecessor motion? Because depending on what motion it is, it affects our standard of review. We asked the trial judge to dismiss the amended complaint, and he denied that motion. We asked on post-trial... Post-trial, you did all sorts of things. But that would be, for your appeal, that would be the target order. What's the target order? The order that denied... Monetary judgment on the contribution action. Yes, sir. Because that was the order that... The assignment that they had to have in court is that it was valuable. So it would be the order on the contribution judgment. Yes, sir. And the other question is, going back to the... You make an argument that somehow the sanction has to be added into the computations. Yes, sir. How do we quantify that in dollars and cents? I think that that goes to the fact that the allocation has to be subjected to judicial scrutiny at the trial court level at the good faith hearing. It's one thing for this court to say that the trial judge considered all the relevant facts and circumstances and acted within his discretion. It's quite another thing to say that it's okay for the plaintiff's attorney to tell the trial judge he doesn't have to see the allocation and then create one later. That's a real problem, and that's what we're asking this court to find is the fundamental flaw with this good faith hearing. If they're going to do an allocation, fine. Then bring it to the attention of the trial court. No appellate decision has ever allowed what happened in this trial court here. Thank you. Nothing further. We'll give you some rebuttal. Thank you, Judge. Counsel. Well, we let him run a half hour. Let's see if you need a guess. Hopefully I will not, Your Honors. Okay. May it please the Court, Your Honors, Counsel, my name is Patrick Anderson. I represent Frank Barnett as assignee of the contribution claims of Walmart Stores, Inc. and ICI, or International Contractors, Inc. With me is Kevin Buegler, who was trial counsel along with myself in the contribution action. What the appeal really here is about is that someone is dissatisfied with the consequences of its own decision, of its refusal to settle, of its refusal to waive or reduce the lien. We know that. There's no question. They gambled and they lost, but that's not the real issue here. Okay. The issue here is whether Walmart paid in excess of its prorated share of the common liability. Now, you want to tell me how you can figure that out without new line being on that verdict form? Well, I believe we can't figure that out because the amount contributed into the common liability by that defendant was removed. So each defendant... Hold on. Hold on. That doesn't make any difference as to what prorated share of liability is. Well, I believe it does because the only entities that pursued their contribution claims were Walmart and new line. Walmart and ICI. New line didn't pursue its contribution claim. That doesn't make any difference whether new line pursued its contribution claim. Summit can never be forced to pay more than its prorated share of common liability. Right? That's the limit. Correct. But how can you know whether they're being forced to pay more than their prorated share if you don't know what the common liability is vis-a-vis all parties that contribute to the injury suffered by the plaintiff? Because what the jury was being asked to decide was as between Walmart, ICI, and Summit what the proportion is. It's a great argument if the issue was 2-1117 joint sever liability. Give me a single case that says you can leave them off the verdict form to determine contribution requirements. I don't have a case that's directly on point for this particular situation. Oh, yes, you do. Twardowski. I'm sorry? Twardowski is directly on point. And this court said you cannot determine prorated share of common liability unless the liability of all tort feasors is assessed. And that's exactly what that case says. The additional issue is that this issue was not raised by Summit in the trial court. They didn't submit a... They argued against the question of whether Walmart paid more than in excess of its prorated share. If you can't figure out the prorated share of Summit because of the absence of new liability, you certainly can't figure out the prorated share of Walmart. The prorated shares were divided based on the entities that pursued their contribution claims. Because New Line didn't pursue its contribution claim doesn't mean that Walmart and ICI are entitled to the division of as to how much they paid in excess of... The prorated share of what? Of the common liability as between... That's the little problem you're sneaking in. There's no case that says it's the prorated share of the common liability of only the parties that seek contribution. The case is, Twardarski says, the consideration of both parties and non-parties in an action is essential for determining liability commensurate with the degree of fault. 100% of fault in this case equals Walmart, ICI, New Line, and Summit. That's 100% of fault. Now, in order to determine whether you, Walmart, because you're the SV of Walmart, you, Walmart, paid more than your prorated share of the common liability, which you contend is $5 million and some odd change. And let's say, for interest sake, that's it. A jury would have to assign your percentage of fault as compared to the fault of all Tward feesers, not merely the two that decided to pursue. That doesn't tell what your percentage of common liability is. I think the critical error in this case is, for some reason, you convinced that trial judge to leave New Line off the verdict form. It wasn't just us that convinced him. Summit was in agreement. Summit didn't submit a verdict form to New Line. Isn't this no different than two parties going to trial and nobody submits an issues instruction? At that particular point in time, what in heaven's name is the jury supposed to do? No, because the amount contributed to the settlement by New Line was eliminated from the common liability. The trial court, I believe, did the correct thing in only asking the jury to... That would be correct if $950,000 equaled New Line's prorated share of common liability. We don't know that because the jury never assessed it. Because New Line didn't ask them to. New Line didn't pursue that right. New Line doesn't... We're not talking about New Line. Now we're talking about Summit. I understand, but I'm talking about the right of New Line to pursue contribution. No, New Line doesn't have to pursue contribution. Okay, they ought to pursue it. Big deal. If Walmart pursues contribution, they are only entitled to contribution to the extent that the amount they pay exceeds their prorated share of common liability. What is their prorated share? You want to say their prorated share is their percentage of the amount paid only by Walmart and ICI. What case says that? Well, we won't believe it because if the settlement was only between Walmart and ICI and was only for $5 million minus the $950,000 that New Line had paid, then the contribution claim and that amount of common liability would have been the same and the jury would have been asked to apportion damages or apportion the fall between... The cases don't talk about the common liability only of the contribution plaintiffs. They talk about the common liability, which is defined, by the way, by the Supreme Court in Zocaro as the total sum of liability of all persons who contributed to the plaintiff's injury. Which would include New Line. Which would include New Line. And that would bring you right into Trudevsky. And Trudevsky is very, very clear. In fact, it was a case of first impression. I can't find a case that follows it, that comes after it because it would appear that everybody recognized that everybody's got to be on their verdict form. Some are wrong, right? I mean, the fact of the matter here is that was a situation that we had worked out that someone didn't object to, that someone didn't submit an alternative verdict form, and someone never made that argument in the trial court. So I don't think it's something that can reverse the verdict here. I understand that the... Counsel, Counsel, hold on. Counsel, if we have no means of determining, based upon what's in front of us and what's in this record, of whether Summit is being required to pay more than its prorated share or Walmart is recovering, or the Walmart contribution claim recovers more or less than its prorated share, if that's not possible, then it occurs to me in the old adage, when a shirt or a blouse is misbuttoned, the best practice is just unbutton it and start all over again. Well, I think in that case, I mean, we would still be in the same position. We would still have New Line not pursuing its... But New Line would be on the verdict form, and then we would know what Walmart's percentage prorated share of common liability is. If common liability is $5 million, did they pay more than that prorated share? If it's $7 million, you know, if that's determined, that's what the common liability is. We would never be able to determine if it could be $7 million until after, of course, the jury came up with its contribution judgment. Correct, Your Honor, but the arguments that were made, the trial court was never given the opportunity to do that, and so I don't believe that that should be a basis for reversal here. The trial court did what it could, and I think had a logical reasoning behind calling out the amount that New Line did and only asking the jury to assign percentages to the contribution...  the only thing I can say is you put your thumb on the scale when you assigned $950,000 to the most culpable of the defendants and then never allowed the jury to determine what its culpability was. Doesn't it say that it was a collusive settlement vis-à-vis the allocation? Well, it certainly wasn't. I mean, there was arguments made to the jury regarding New Line. Some had argued that New Line was the sole proximate cause of the injury, and the jury obviously rejected that. They obviously rejected the argument because they found for the... No, counsel, counsel. If New Line was not on the verdict form and the jury was told the entities on the verdict form had to equal 100 percent, what difference would it make  Just the fact that the jury did consider those arguments. If the jury considered the argument and believed some of it, that New Line was the cause of this accident, it would not have returned... It would have had zero percentages for Wal-Mart or the price. It had to be 100 percent. That's what they were told. It had to be 100 percent. No matter how you get there, it has to be 100 percent. And you're trying to tell me that if they thought that New Line was the most culpable defendant, they would come up with a verdict form that didn't equal 100 percent? Well, I think they probably would. I mean, they would have had to. If they would have had it, they would have either had to make some sort of an alternative finding if they were to accept the argument... They weren't given that opportunity to do it, Houseman. They just simply weren't given that opportunity. And the reason that they weren't is because Summit never raised this issue. The fact that they didn't was a strategic decision. The common liability goes higher with them. So whatever percentage... If New Line's involved, the amount of common liability is higher than it had been in this situation where we removed them. So if Summit retried the case with New Line in it, they retained the same percentage, their number, the actual monetary value of their percentage of fault, would increase. So I think it was a strategic decision on Summit's part not to make that contention in the trial court. And so... Mr. Anderson. Yes. In the white brief, we've got the jury form, right? Uh-huh. It's pre-typed 100 percent as a total. All right. Has the jury given any other verdict form? No, Your Honor. All right. Is there any value to the assignment? Does the assignment have any value whatsoever? The value of the assignment... Not at the time of the assignment. It's incalculable at the time of the assignment. It may have zero value. It may be worth what it was in this case. So... If we don't know its potential value, whether it has value or if it doesn't have value, at the time that the settlement is entered into, how then do we calculate common liability for purposes of contribution? Would you write an opinion that says that if the parties place no value in their settlement agreement upon a contribution action assigned to the plaintiff, that that assignment will not be figured in in determining what the common liability is for contribution? And I think Your Honor touched on that in Mr. Bregoli's argument in that there are two separate entities here. There's the underlying tort claim for liability and damages that belongs to Mr. Barnett, and then there's a claim for the equitable distribution of damages by Walmart and ICI. And those are two separate claims that aren't supposed to be combined in determining the common liability. Your opponent's going to stand up here and say, wait a minute, Judge, that doesn't make any sense because why would they even want the assignment if it doesn't have some value? And why would it be included within the settlement agreement? He wanted $5 million plus the value of the contribution claim assigned. That's what he wanted. And that becomes common liability. He wouldn't have settled it for just the $5 million, would he? And not the assignment of the contribution claim? I don't know that for sure. We don't know. Then why is it in the settlement agreement? That is the agreement that we agreed to. So it must have value. It must have value. It's part of the consideration. Sure. But that value is attached to the equitable distribution of damages portion that belongs to Walmart and ICI and not the underlying claim. I know you were talking about Walmart himself. That's true. But you accepted that value as part of your consideration for releasing them from liability. So it is part of your tort recovery. Well, I believe it's part of the tort recovery through an assignment, through a contraction of the agreement between ICI, Walmart, and Barnett, on the other hand, and I think that's consistent. I don't think there's anything wrong with the assignment fundamentally. I mean, I don't agree with the argument. I mean, I think assignments are okay, I mean, you know, as long as they're not collusive. The question in this case, it was or wasn't, but that's another issue. But it has some value. Sure. Your client wanted it. Sure. He wanted it in order to release liability. Yeah. So it's part of the settlement. I agree that it had value, just as it had value, the assignment had value in Block and the assignment had value in Kazone. And still this court found that it was permissible to assign that claim even to a non-tortfeasor plaintiff in that situation. So... I'm not accusing you all in the same way. I'm just trying to determine if it had some value that has to be calculated into the common liability for determining whether a party paid more than their prorated share. I think it makes it basically impossible to try the contribution claim. If you have to assign, there's... the value of the common liability can't be dependent on the outcome of the contribution claim. Ah, very good. Because then it's mathematically impossible, isn't it? Sure. A common liability would be cash plus a percentage of A. And that can't happen. A can't be on both sides of the equation. So how could you ever calculate a monetary judgment in contribution if you had to rely on the jury's verdict in contribution in order to determine common liability? You absolutely would not be able to. It can't be done. It can't be done. Oh. Okay. Go on. With respect to... What do you say, by the way, about this set-off for the insurance proposal? What's your position? First of all, the number of items that Your Honor discussed with Mr. Pagori and his argument, the fact that the record's unclear as to what actions were covered by what policy, those types of facts, the record is unclear only shows that the burden has not been met by summit. And it's their burden to prove that entire set-off. Okay. So your argument is the right of set-off is an affirmative defense if they can't prove what the allocation was to Walmart, they're entitled to nothing because they failed to meet their burden. That's part of my argument, yes. The other argument is that the set-off issue wasn't raised in their draft post-trial motion and wasn't raised on the issue of notice of appeal. But to the merits of it, the reasoning behind the cases, part of the reasoning behind the cases that summit cited is that when parties contract for joint insurance, they share a mutually exculpatory intent. And here, there's evidence that refutes the mutually exculpatory intent between summit and ICI. The contract between summit and ICI demonstrates the opposite of mutually exculpatory intent. It explicitly indicates that summit is to assume responsibilities for the injuries to its employees. So the contract doesn't demonstrate the same type of mutually exculpatory intent that was present in Bresenio, in Prusich, and Monshine. Moreover, in Prusich and Monshine, the court was more concerned, was very concerned with the fact that it was a joint insurer that was suing its own insurer, that they were basically going after their own insurer for amounts that were covered by premiums paid by that insurer. Here, the insurer is not the third party plaintiff. The insurer is not the seeking to recover. What did the decisions of Walmart and summit require vis-a-vis summit's obligation to provide insurance that named Walmart? What did that require? I don't know. What does the contract say, the insurance policy say? As I stand here, as I stand here right now, I do not know. Okay. Let's run back to the forfeiture issue. Sure. You argue that this issue is off the table because they didn't include in their post-trial motion. This is an unusual trial. Sure. It's, the jury was asked to determine the proportionate fault of three of the four, three of the five winning parties. Okay. All right. Summit essentially loses this by getting the 52% assessed against it. Sure. Are they, are you saying at that point they're supposed to file a post-trial motion raising the set-off? Yes. Okay. Yes. And the only post-trial motion was related to quantifying the 52% into the two million, isn't that right? No. I believe that the summit filed a post-trial motion outlining the issues with their assignment and the issues with good faith finding. No one in that post-trial motion was set-off. But their argument is we raised it in response to your post-trial motion, therefore it's not way for purpose appeal. And I'm relying on the statutes that require specificity in your post-trial motion to preserve your issue for review. In addition, the set-off issue wasn't specifically mentioned in the notice of appeal. So those are my perpetrator waiver arguments. What about the good faith finding? The good faith finding? Absolutely. That's the first thing that I was going to say is that you really make no difference because the court finds it premature and we send it back down for another hearing. The court may or may not find that it's premature because there was no contribution claimed by somebody as against Walmart or ICI. That the only value of the good faith finding, the cutting off of liability on the part of Walmart and ICI, is not there. I mean it doesn't make any difference. So who cares whether it's a good faith or not. Exactly. So I really wouldn't make any difference at all. So the comparative negligence of Barnett was subsumed in the settlement. The sanctions liability is around or hit on. There's nothing to indicate that that's different than torque liability or anything the contribution would not be available for. The allocation between theories of recovery is not required for a good faith finding. And there's no case that specifically requires an allocation as to each defendant in a situation where there's a multi-party situation. I think the court can, based on all the evidence before it and the arguments of the parties and especially with this judge, this judge has had a long history with this case. Judge O'Hara presided over the case for several dispositive motions, I think 47 orders and several years. He found good faith in February. He didn't come up with the allocation until April. And I believe that Judge O'Hara was within his discretion to find that the settlement was in good faith in the aggregate. In the aggregate it's great. There's not a problem with the question of the aggregate. The question is, was it in good faith vis-a-vis Walmart? Because you pile down with 52 percent of the amount and the question becomes in order to determine whether the allocated sum, which is now going to be used to determine whether they paid more than their per red share, was in fact more some relationship to their actual culpability as compared to the three settling defendants. And so I suppose that is the question. The global argument doesn't make any sense because it's the question of whether Walmart paid more than its per red share, not whether the three of them collectively paid more than their per red share. It was represented in the motion for good faith finding that each of the defendants were paying in excess of their per red a share in compensation for some. And I understand that the allocation as to the amounts weren't specifically in there, but I think based on the representations of each of the parties' attorneys and what Judge O'Hara knew about the case, he could make the decision that the settlement between the parties willing to settle in front of them was in good faith, particularly given the fact that he gave Summit two opportunities to show wrongful action, to show collusion, to show fraud. The question is how would Summit ever show that settlement was not in good faith if it doesn't know how much was paid by each one? I think that goes back to your original question on this issue, which is what difference would it make is even if we go back, say your Honor's remanded the case for saying that the good faith finding was premature. Remember back to Judge O'Hara for a further determination as to the good faith finding. We now have the allocation. So the judge looks at the allocation and says it's in good faith or not in good faith, and as your Honor alluded to, whether he decides it's in good faith or not doesn't invalidate the settlement. There is no contribution claimed by Summit, so it would make no difference at all. So unless your Honors have any other questions for me or any other issues that you want me to address, I will sit down and thank your Honor for your time and just ask this court to affirm the judgment of the trial court. Thank you, your Honor. The good faith hearing does matter to Summit. For example, take a look at Cianci. In that case, you had intentional torts and you had negligence, and they piled money onto the negligence so they can pursue a contribution action which they couldn't pursue if they piled the money onto the intentional tort. It does matter to Summit how they allocate this, and that's what we complained about at the good faith hearing and later and on this appeal. Why does it matter to you? Because they're piling on the most amount of money to the least culpable who's paying for Mr. Barney's comparative negligence, who's paying for his contempt of court, and that's the one, Walmart is the one, who winds up with the only collectible judgment. And that, what they did was never subjected to judicial scrutiny. Now, no judge ever considered the fact that they were piling all this money on to the least culpable, and then they go and dismiss Newline, and I was troubled by the fact that counsel said Newline didn't pursue its contribution action as if that was some other entity who was making that decision. That was Frank Barney who dismissed Newline's action as part of what I believe was a scheme to pile on all this money on the least culpable who was paying for comparative negligence, who was paying for his contempt of court, and then now we're being asked to pay contribution. So, to answer this court's question, yes, sir, the allocation matters to summit. Now, yes, there is some value to the assignment. There has to be some value to the assignment. You can't ignore it, and that goes into determining the common liability. If you buy into their argument that 400,000 and change is the true common liability for this action, then that takes you right to my fundamental point, which is that they either got double recovery or they didn't pay their pro rata shares. Either way, it's got to be reversed. Finally, on the mild-shying issue, this is not waived. It's not waived because it was filed in response to a post-trial motion. It was filed in 30 days of the judgment, and the critical point here is that the trial court did consider it. The trial court considered the exact same argument on the exact same authorities with the exact same request and denied it that we're asking this court to consider. And it was paid for the common liability. 773 is really, in the eyes of Brasino, some of its money. Now, the argument that I struggled with for a few moments was Brasino is really based on mutual exculpatory intent, and our contract says the opposite. Our contract does not specify mutual exculpatory intent. I acknowledge that fact. I would like to suggest the court to take a second look at Brasino at 197, 903, 905. The exact same language in our contract was in the contract in Brasino. In fact, it's in almost all of these contracts, that the general contractor always says to his clients that they are going to look to the insurance. So that's how Brasino dealt with the mutual exculpatory intent problem. Funny issue, I'll grant you, but the real basis of Monshine, of Brasino, and Karunasic is the fact that   contractor always says to his clients that they are going to look to the mutual exculpatory intent problem. So the general contractor always says to his clients that they are going to look     intent problem. So the general contractor always says to his clients that they are going to look to the mutual exculpatory intent  Thank you.